THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:12-cr-00020-MR-DLH

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> (4) THOMAS E. "TED" DURHAM, JR; ) <br> (5) KEITH ARTHUR VINSON; and ) <br> (6) GEORGE M. GABLER, ) <br> ) <br> Defendants. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Motions to Strike Surplusage from Indictment filed by Defendants Thomas E. Durham, Jr. and George M. Gabler [Docs. 122, 143].

**I.     PROCEDURAL BACKGROUND**

On April 4, 2012, the Defendants Avery Ted Cashion (Cashion), Joan Lusk Cashion, Raymond M. Chapman (Chapman), Thomas E. Durham, Jr. (Durham), and Keith Arthur Vinson (Vinson) were charged in a Bill of Indictment with various violations of federal law, including conspiracy, bank and wire fraud, and money laundering. [Doc. 1]. A Superseding Bill of Indictment was filed against four of the five original Defendants on December 5, 2012. [Doc. 100]. The Superseding Bill of Indictment also

added two new Defendants, Aaron Ollis (Ollis) and George M. Gabler (Gabler).

Durham filed a Motion to Strike Surplusage from Indictment on January 16, 2013. [Doc. 122]. Vinson filed a Motion to Adopt this motion [Doc. 126], which was granted on January 30, 2013 [Doc. 140]. Gabler filed a Motion to Adopt Durham's motion as well on February 4, 2013 [Doc. 142], which the Court granted on February 5, 2013 [Doc. 145]. Gabler then filed his own Motion to Strike Surplusage from Indictment on February 4, 2013 [Doc. 143]. After seeking an extension of time to do so, the Government filed a consolidated Response opposing the Defendants' Motions on February 15, 2013. [Doc. 149].

## II. ANALYSIS

A bill of indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged …." Fed. R. Crim. P. 7(c)(1). Upon motion of a defendant, "the court may strike surplusage from the indictment…." Fed. R. Crim. P. 7(d). "The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory." United States v. Poore, 594 F.2d 39, 41 (4th Cir. 1979) (citations omitted). "A motion to

strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." United States v. Williams, 445 F.3d 724, 733 (4th Cir. 2006) (quoting United States v. Rezaq, 134 F.3d 1121, 1134 (D.C. Cir. 1998)). The decision to strike surplusage is a matter within the discretion of the Court. Poore, 594 F.2d at 41.

In the present case, the Defendants seek to delete or amend over 40 different paragraphs and/or headings in the Superseding Bill of Indictment. With the few exceptions that the Court addresses below, the Defendants fail to demonstrate how the information sought to be stricken is *both* inadmissible *and* prejudicial. See United States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir. 2006) (noting that whether surplusage should be stricken is a conjunctive test, requiring a showing of both irrelevancy and prejudice; "information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion").

The Defendants generally object to the use of descriptive headings in the Table of Contents and in the various sections of the Superseding Bill of Indictment, arguing that these headings and subheadings improperly

employ pejorative terms.  Contrary to the Defendants' arguments, however, for the most part, the headings use the phrase "offenses related to," which are followed by specific conduct, specific defendants, unindicted coconspirators or their related entities.  Such information is relevant and material to the conduct charged.

The Defendants also object to the inclusion of background information about the Seven Falls Development and applicable banking statutes and regulations, as well as the use of certain phrases and definitions as short form references to the multiple fraudulent schemes used by the Defendants to circumvent the cited statutes and regulations. This type of background information, however, is permissible because it is relevant to the charges at issue.  "Language is properly included in an indictment if it pertains to matters which the government will prove at trial. These matters need not be essential elements of the offense if they are in a general sense relevant to the overall scheme charged, or contain relevant background information."  United States v. Yeaman, 987 F. Supp. 373, 376-77 (E.D. Pa. 1997) (citations omitted).

Further, the Court finds no merit in the Defendants' argument that use of descriptive terms such as "straw borrower," "straw loans," "lot loan scheme," "check kiting," "*bona fide*," and "*quid pro quo*" are inflammatory

4

Case 1:12-cr-00020-MR-SCR     Document 183     Filed 04/26/13     Page 4 of 8

and prejudicial.  Each of these terms, however, refers to specific circumstances under which the alleged fraud was committed and are terms which are commonly used to describe particular forms of fraud or to distinguish lawful conduct from unlawful conduct.  While the Defendants contend that they will be prejudiced by the use of these terms and the Superseding Bill of Indictment's attempt to define these words in a certain way, any risk of such prejudice is alleviated by the fact that the jury will be specifically instructed that the Superseding Bill of Indictment is not evidence.  Further, the Court does not intend to read the introductory paragraphs of the Superseding Bill of Indictment to the jury.[1]  See Williams, 445 F.3d at 734 (finding no prejudice where the jury was not given a copy of the indictment and was specifically instructed that the indictment was not evidence).

The Defendants also seek to strike certain language in Paragraph 23 of the Superseding Bill of Indictment regarding the "Jarco loan."  Contrary to the Defendants' argument, however, evidence concerning this loan,

---

[1] Because the Court does not intend to read the introductory paragraphs of the Superseding Bill of Indictment to the jury, any copy of the Superseding Bill of Indictment that is supplied to the jury during their deliberations will have to be redacted to exclude reference to these paragraphs.  The Government shall be expected to provide a redacted version of the Superseding Bill of Indictment to the Court prior to the time that the jury is charged in this case.

5

including its original transfer from Sun Trust Bank, is likely relevant and admissible to prove motive, to define one of the objects of one of conspiracy counts, and to establish the misapplication of bank funds. As set forth in Paragraphs 69-71 of the Superseding Bill Indictment, PCB made additional loans to the co-defendants and other straw borrowers to hide the troubled nature of this loan and other assets from the FDIC examiners. The transfer of the loan to PCB also likely has probative significance because it is alleged that the loan officer in charge of moving the Jarco loan out of Sun Trust Bank was the wife of chief credit officer Gourlay, a subordinate of Durham's. Therefore, this information regarding the Jarco loan is likely relevant and admissible, and there is no legal basis for striking it from the Superseding Bill of Indictment.

The Defendants also seek to strike the descriptions of certain regulatory requirements for banks set out in Paragraphs 29 through 31. As the Government points out, however, these paragraphs are likely relevant and admissible because both PCB and the Bank of Asheville were required to follow these regulations, and the Defendants' failure to adhere to these regulations formed the motive to disguise these violations through the *quid pro quo* loans and other means set forth in Counts Thirty-Four and Thirty-Seven through Forty.

The Defendants also seek to strike the portion of Paragraph 39 which reads that "PCB was supposed to purchase these loans once it received its charter, but failed to do so for all but a few of the Seven Falls-related loans." This evidence, however, is likely relevant and admissible because it tends to show that Durham and the officers at PCB were familiar with the "loans to one borrower" ("LTOB") regulations, a fact which the Government anticipates that Durham is likely to contest.

The Defendants also seek to strike the last sentence of Paragraph 67, which refers to Bancorp's financial rescue of PCB. In support of this argument, the Defendants contend that the likelihood of PCB's collapse is a sentencing issue and thus not relevant at trial. While actual loss need not be proved, such evidence is nevertheless likely relevant and admissible to the issue of whether the Defendants had the intent to injure or defraud the bank under 18 U.S.C. § 656. See United States v. Duncan, 598 F.2d 839, 858 (4th Cir. 1979) (noting that conviction for misapplication for bank funds requires proof that the defendant misapplied funds "with the intent to injure of defraud the bank").

For the foregoing reasons, the Court denies the Defendants' Motions to Strike Surplusage.

**IT IS, THEREFORE, ORDERED** that the Motions to Strike Surplusage from Indictment filed by Defendants Thomas E. Durham, Jr. and George M. Gabler [Docs. 122, 143] are **DENIED**.

**IT IS SO ORDERED.**   Signed: April 26, 2013

Martin Reidinger
United States District Judge